1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

| | |
|---|---|
| SUSAN A. SMITH,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | NO.  C13-476-JCC-JPD<br><br><br>REPORT AND<br>RECOMMENDATION |

14

        Plaintiff Susan A. Smith appeals the final decision of the Commissioner of the Social

15

Security Administration ("Commissioner") that denied her application for Supplemental

16

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f,

17

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18

the Court recommends that the Commissioner's decision be reversed and remanded for further

19

proceedings.

20

I.        FACTS AND PROCEDURAL HISTORY

21

        At the time of the administrative hearing, Plaintiff was a 45-year-old woman with a

22

10th grade education.  Administrative Record ("AR") at 34.  Her past work experience

23

includes employment as a kitchen helper, teacher aide, and babysitter, but the ALJ indicated

24

that this work was not performed at "substantial gainful activity" levels.  AR at 19, 58.

REPORT AND RECOMMENDATION - 1

1    On June 26, 2009, Plaintiff filed a claim for SSI payments, asserting that she is disabled

2    due to depression, posttraumatic stress disorder ("PTSD"), a spinal disorder, and anxiety.  AR

3    at 149-52, 163, 191.  The Commissioner denied Plaintiff's claim initially and on

4    reconsideration.  AR at 76-79, 86-91.  Plaintiff requested a hearing, which took place on

5    December 7, 2011.  AR at 27-65.  On December 16, 2011, the ALJ issued a decision finding

6    Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a

7    specific job existing in significant numbers in the national economy.  AR at 11-20.  Plaintiff's

8    administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5,

9    making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42

10   U.S.C. § 405(g).  On March 15, 2013, Plaintiff timely filed the present action challenging the

11   Commissioner's decision.  Dkt. 1, 3.

## II.      JURISDICTION

13   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

14   405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

16   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

17   social security benefits when the ALJ's findings are based on legal error or not supported by

18   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

19   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

21   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

22   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

23   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

24   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Ms. Smith bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.      DECISION BELOW

On December 16, 2011, the ALJ found:

1.      The claimant has not engaged in substantial gainful activity since June 4, 2009, the application date.

2.      The claimant's major depression, diabetes mellitus, PTSD, and obesity are severe impairments.

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.      The claimant has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that the claimant can stand only 4 hours in an 8 hour workday, can perform only simple, routine and repetitive tasks, is limited to only occasional interaction with the public and occasional interaction with co-workers, and is limited to only frequent feeling.

5.      The claimant has no past relevant work.

6.      The claimant was born on XXXXX, 1966 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7.      The claimant has a limited education and is able to communicate in English.

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, since June 4, 2009, the date the application was filed.

AR at 13-20.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Whether the ALJ gave sufficient reasons to discredit Plaintiff.

2.     Whether the ALJ erred in assessing the opinions of Beth Sandman, M.D.; David Widlan, Ph.D.; and Jacquelin Higgins, MS, LHMC, MHP.

3.     Whether the RFC and hypothetical questions were complete.

Dkt. 17 at 1-2.

## VII.     DISCUSSION

A.     <u>The ALJ Did Not Err in Discounting Plaintiff's Credibility.</u>

The ALJ noted a number of reasons to discount Plaintiff's credibility: (1) limited improvement with her mental-health symptoms, despite non-compliance with medication; (2) some normal objective medical findings; and (3) self-reported daily activities inconsistent with allegations of total disability.  AR at 17.  As to the third reason, the ALJ pointed to Plaintiff's ability to prepare meals, take care of her personal hygiene, use public transportation and/or walk to get around town, shop for groceries twice a week, and babysit for a neighbor as demonstrating "a higher level of functioning than the claimant alleges."  *Id.* (citing AR at 172-79, 472).

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discount her credibility.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (holding that where there is no evidence of malingering, and ALJ must provide clear and

convincing reasons to reject a claimant's testimony). Plaintiff acknowledges that she "may have uttered some contradictions, but nothing she said indicated [an] ability to sustain 8 hour days, 40 hour weeks, week after week in sustained employment." Dkt. 17 at 14. She also acknowledges that there is evidence of medication non-compliance, but emphasizes that her treating providers were aware of non-compliance and still found her to be impaired. Dkt. 17 at 14-15.

Plaintiff has failed to establish that the ALJ erred in discounting her credibility, because the ALJ drew reasonable inferences from the evidence, which undisputedly contains evidence of inconsistent statements regarding capabilities and medication non-compliance. Although Plaintiff interprets this evidence in a way that does not undermine her credibility, she has not shown that the ALJ's interpretation was unreasonable. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Specifically, Plaintiff has not shown that the ALJ was unreasonable in finding that her self-reported daily activities were inconsistent with her allegations that she "[b]asically [lives] like a hermit at home" and that her anxiety constantly makes her mind race such that it is impossible to stay focused on anything for very long. *See* AR at 43. Daily activities inconsistent with allegations undermine the credibility of a claimant's testimony. *See, e.g., Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1224-25 (9th Cir. 2010) (finding that an ALJ did not improperly discredit a claimant's subjective testimony that he could not "put up" with most people, where the ALJ noted the claimant's ability to interact with providers and members of the public, and date and get married).

Moreover, Plaintiff's concession that she has not always been compliant with her treatment regimen for mental-health symptoms and diabetes undermines the credibility of her

description of severe symptoms, because those symptoms do not accurately reflect potential

improvement with compliance — and impairments that can be controlled with medication

cannot be considered disabling. *See Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001,

1006 (9th Cir. 2006). The ALJ noted that Plaintiff experienced limited improvement of

symptoms despite her failure to entirely comply with her treatment regimen (see AR at 425,

455, 484), and this is a clear and convincing reason to discredit her testimony, especially

because Plaintiff admits that she did not always comply with treatment and offers no

compelling justification for so doing. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

2008) (holding that an ALJ properly considers an unexplained or inadequately explained

failure to follow a prescribed course of treatment). Because the ALJ provided clear and

convincing reasons to discount Plaintiff's credibility, the ALJ did not err.

B.    The ALJ Erred in Assessing Some of the Medical Opinions.

      The ALJ assigned great weight to the opinions of Plaintiff's therapist, Ms. Higgins, and

consultative examiner Dr. Widlan, and "some weight" to the opinions of Plaintiff's treating

psychiatrist Dr. Sandman. AR at 18-19. The Court will first address one issue that Plaintiff

raises with respect to all providers, and then address the provider-specific arguments.

      1.    *Global Assessment of Functioning ("GAF") Scores*

      The ALJ did not mention the GAF scores indicated by these three providers in his

decision. To the extent that Plaintiff assigns error to this failure, her assignment of error is

rejected because GAF scores are not directly probative as to the ALJ's disability inquiry, and

thus need not be discussed by an ALJ, because the Commissioner has determined the GAF

scale "does not have a direct correlation to the severity requirements in [the Social Security

Administration's] mental disorders listings." 65 Fed. Reg. 50,746, 50,765-766 (Aug. 21,

2000).

REPORT AND RECOMMENDATION - 8

2.     *Dr. Sandman's Opinions*

Dr. Sandman signed medical source statements apparently prepared[3] by therapist Annie Sharrett, B.A., in October 2011 (AR at 420-32): the ALJ assigned "some weight" one statement and "little weight" to the others, on the grounds that (1) the bipolar disorder diagnosis listed in the opinions was mentioned here for the first time, and thus cannot meet the durational requirement; (2) Plaintiff's self-reported ability to use public transportation is inconsistent with Dr. Sandman's opinion that Plaintiff has marked difficulty using public transportation; (3) Dr. Sandman stated that she had treated Plaintiff for years, but there are no treatment notes to support this; and (4) most of the limitations mentioned in one of Dr. Sandman's opinion are accounted for in the RFC assessment.  AR at 18-19.

Plaintiff contends that none of these reasons are legitimate.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (holding that an ALJ must provide specific and legitimate reasons to discount a controverted medical source opinion).  As to the first reason — durational deficiencies as to bipolar disorder — Plaintiff points to Dr. Sandman's June 2011 evaluation[4] listing bipolar disorder as a "rule-out" diagnosis, and treatment notes in the months thereafter referring to symptoms of bipolar disorder.  Dkt. 17 at 8-9 (citing AR at 455-58, 461).  The Commissioner concedes that the ALJ misapprehended the support in the record for Dr. Sandman's bipolar disorder diagnosis, but correctly notes that Plaintiff has not established that the ALJ overlooked any functional limitations associated specifically with bipolar disorder:

---

[3] Plaintiff contends that the ALJ rejected this opinion as if it was written by a non-acceptable medical source (Dkt. 17 at 8), but the ALJ did no such thing.  *See* AR at 18-19 (noting that Dr. Sandman signed a report prepared by Ms. Sharrett, but not discounting the opinion based on the status of its author).

[4] Plaintiff also assigns error to the ALJ's failure to discuss this evaluation (Dkt. 17 at 8-9), but fails to identify any significant or probative opinions regarding Plaintiff's functioning that were contained in this report.  AR at 459-61.  Furthermore, the ALJ did discuss the evaluation in his discussion of the evidence.  AR at 18-19.

1    Plaintiff herself argues that the limitations identified by Dr. Sandman could be attributed to

2    depression and PTSD, even if bipolar disorder had remained a rule-out diagnosis.  Dkt. 17 at 9.

3    Based on that concession, the ALJ's error in dismissing the bipolar disorder diagnosis is

4    harmless.

5            As to the ALJ's second reason — inconsistencies between Dr. Sandman's opinion and

6    Plaintiff's self-reported activities — Plaintiff appears to argue that even if she contradicted

7    herself elsewhere in the record regarding her ability to use public transportation, Dr. Sandman

8    was entitled to rely on her own observations and not on Plaintiff's self-report.  Dkt. 17 at 10.

9    But Plaintiff does not acknowledge that Dr. Sandman's opinion regarding her ability to use

10   public transportation was not supported by independent observation; clinic treatment notes in

11   fact indicate that Plaintiff was able to use public transportation.  *See, e.g.*, AR at 469, 481-82.

12   It is unclear how Dr. Sandman's opinion regarding Plaintiff's ability to use public

13   transportation could have been formed via independent observation.  Plaintiff has not shown

14   that the ALJ erred in finding that inconsistencies between Dr. Sandman's opinion and

15   Plaintiff's self-reported activities supported discounting Dr. Sandman's opinion.  *See Rollins v.*

16   *Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating

17   physician's opinion that was inconsistent with the claimant's level of activity).

18           The ALJ's third reason — the duration of the treating relationship — is not entirely

19   clear as to whether the ALJ is referring to the length of time Plaintiff was treated by Ms.

20   Sharrett or by Dr. Sandman.  AR at 18.  The record shows that Plaintiff began therapy with Ms.

21   Sharrett in  March 2011, after transferring care from her previous therapist (see AR at 466).

22   Plaintiff testified at the December 2011 administrative hearing that she had been seeing Dr.

23   Sandman for "going on a good year, it's been quite awhile now."  AR at 46.  Furthermore, the

24   record contains treatment notes from Dr. Sandman's clinic dating back to November 2009 (AR

REPORT AND RECOMMENDATION - 10

1    at 240-52), which is consistent with the dates indicated on Dr. Sandman's opinion.  AR at 425.

2    Thus, this reason is not a legitimate basis to discount Dr. Sandman's opinion.

3         As to the ALJ's final reason to assign "little weight" to Dr. Sandman's October 2011

4    opinion (AR at 425-32) — because most of the limitations she identified are accounted for in

5    the RFC, which limited Plaintiff to simple, repetitive tasks, with only occasional interaction

6    with co-workers and the public (AR at 15)  — is not directly addressed by Plaintiff.  She

7    argues that Dr. Sandman's opinions indicate that her mental impairments were severe, but the

8    ALJ acknowledged the existence of mental impairments.  Dkt. 17 at 10-11.  She also argues

9    that the opinions of other providers were either consistent or inconsistent with Dr. Sandman's

10   opinions, but also acknowledges that the ALJ did not rely on other inconsistent medical

11   opinions as a basis for discounting Dr. Sandman's opinions; thus, the relevance of other

12   medical opinions to an assessment of the ALJ's rejection of Dr. Sandman's opinions is not

13   clear.  Dkt. 21 at 7-9.  Because Plaintiff has not addressed whether the ALJ's RFC assessment

14   is inconsistent with Dr. Sandman's functional opinions, she has not shown that the ALJ's

15   analysis was erroneous.  Accordingly, because Plaintiff has failed to establish that none of the

16   ALJ's reasons to discount Dr. Sandman's opinions is legitimate, his analysis should be

17   affirmed.

18        2.    *Dr. Widlan's Opinion*

19        The ALJ assigned "great weight" to the opinion of consultative examiner Dr. Widlan.

20   AR at 18.  Plaintiff argues that the ALJ actually rejected portions of Dr. Widlan's opinion —

21   specifically his opinion regarding Plaintiff's significant deficit in adaptation — without

22   providing specific and legitimate reasons to do so, and thus did not fully account for Dr.

23   Widlan's opinion in the RFC assessment.  Dkt. 21 at 2.

24

REPORT AND RECOMMENDATION - 11

1    Plaintiff's argument has merit.  Dr. Widlan indicated that while Plaintiff has some

2    concentration deficits, she is nonetheless able to complete simple, repetitive tasks.  AR at 352.

3    He noted that she was "cognitively able to accept instruction from a supervisor." *Id.*  Dr.

4    Widlan also noted significant adaptation deficits, as exemplified by her failure to sustain

5    employment for ten years and her restricted range of activities. *Id.*

6        The Commissioner argues that because the ALJ restricted Plaintiff to simple, repetitive

7    tasks, consistent with Dr. Widlan's opinion, Plaintiff has failed to show any error in the ALJ's

8    assessment of Dr. Widlan's opinion.  Dkt. 20 at 6.  The Commissioner mentions Dr. Widlan's

9    opinion regarding Plaintiff's adaptation deficit, but fails to expressly indicate how the ALJ's

10   assessment accounted for that particular deficit.  Because Dr. Widlan opined that Plaintiff had

11   a significant deficit in adaptation, and the ALJ acknowledged the same and purported to assign

12   great weight to it, but failed to explicitly account for that deficit or provide any reason to

13   discount Dr. Widlan's opinion on that issue, the ALJ erred.  On remand, the ALJ shall reassess

14   Dr. Widlan's opinion, either accounting for Dr. Widlan's opinion regarding Plaintiff's deficit

15   in adaptation, or providing specific and legitimate reasons to discount his opinion.

16        3.    *Ms. Higgins*

17        The ALJ assigned "great weight" to Ms. Higgins's opinions, to the extent that her

18   opinions were consistent with his RFC assessment.  AR at 18.  He provided no reasons to

19   discount any particular aspect of Ms. Higgins's opinion, and the Commissioner argues that this

20   is appropriate because the ALJ's RFC assessment is consistent with Ms. Higgins's opinion.

21   Dkt. 20 at 13-14.  But the Commissioner fails to explain how the ALJ's RFC assessment

22   accounts for Ms. Higgins's opinion that Plaintiff has a marked impairment in her ability to

23   respond appropriately to and tolerate the pressures and expectations of a normal work setting.

24   Germane reasons may exist to discount that opinion, but the ALJ did not provide any, and

REPORT AND RECOMMENDATION - 12

thereby erred.  *See Smolen*, 80 F.3d at 1288-89 (holding that the ALJ can reject the testimony of lay witnesses only upon giving germane reasons).  Accordingly, on remand the ALJ shall reassess Ms. Higgins's opinion, either accounting for the functional limitations contained in her opinion in the RFC assessment, or providing germane reasons to discount her opinion.

C.      The ALJ Shall Reassess Plaintiff's RFC.

For the reasons explained in the previous section, the ALJ's RFC assessment and hypothetical were erroneous to the extent that they did not account for Plaintiff's adaptation deficit or her limitation in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, given that the ALJ provided no reasons to discount medical opinions as to those limitations.  On remand, the ALJ shall reassess Plaintiff's RFC in light of Dr. Widlan's and Ms. Higgins's opinions, and obtain additional vocational expert testimony if necessary.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 27th day of September, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13